UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| CHARLES FISHER III, | ) |
| Plaintiff, | ) ) ) |
| v. | ) No. 4:21-CV-865 RLW ) |
| FARMINGTON COMMUNITY SUPERVISION CENTER, | ) ) ) ) |
| Defendant. | ) |

## MEMORANDUM AND ORDER

This matter is before the Court on the motion of plaintiff Charles Fisher III for leave to commence this civil action without prepayment of the required filing fee. (Docket No. 2). Having reviewed the motion and the financial information submitted in support, the Court has determined that plaintiff lacks sufficient funds to pay the entire filing fee, and will assess an initial partial filing fee of $2.05. *See* 28 U.S.C. § 1915(b)(1). Additionally, for the reasons discussed below, the Court will dismiss this action without prejudice. *See* 28 U.S.C. § 1915(e)(2)(B).

### 28 U.S.C. § 1915(b)(1)

Pursuant to 28 U.S.C. § 1915(b)(1), a prisoner bringing a civil action in forma pauperis is required to pay the full amount of the filing fee. If the prisoner has insufficient funds in his or her prison account to pay the entire fee, the Court must assess and, when funds exist, collect an initial partial filing fee of 20 percent of the greater of (1) the average monthly deposits in the prisoner's account, or (2) the average monthly balance in the prisoner's account for the prior six-month period. After payment of the initial partial filing fee, the prisoner is required to make monthly payments of 20 percent of the preceding month's income credited to the prisoner's account. 28 U.S.C. § 1915(b)(2). The agency having custody of the prisoner will forward these monthly payments to the

Clerk of Court each time the amount in the prisoner's account exceeds $10.00, until the filing fee is fully paid. *Id*.

In support of his motion for leave to proceed in forma pauperis, plaintiff submitted a copy of his certified inmate account statement. (Docket No. 9). The account statement shows an average monthly deposit of $10.24. The Court will therefore assess an initial partial filing fee of $2.05, which is 20 percent of plaintiff's average monthly deposit.

## Legal Standard on Initial Review

Under 28 U.S.C. § 1915(e)(2), the Court is required to dismiss a complaint filed in forma pauperis if it is frivolous, malicious, or fails to state a claim upon which relief can be granted. To state a claim under 42 U.S.C. § 1983, a plaintiff must demonstrate a plausible claim for relief, which is more than a "mere possibility of misconduct." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. at 678. Determining whether a complaint states a plausible claim for relief is a context-specific task that requires the reviewing court to draw upon judicial experience and common sense. *Id*. at 679. The court must "accept as true the facts alleged, but not legal conclusions or threadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Barton v. Taber*, 820 F.3d 958, 964 (8th Cir. 2016). *See also Brown v. Green Tree Servicing LLC*, 820 F.3d 371, 372-73 (8th Cir. 2016) (stating that court must accept factual allegations in complaint as true, but is not required to "accept as true any legal conclusion couched as a factual allegation").

When reviewing a pro se complaint under 28 U.S.C. § 1915(e)(2), the Court must give it the benefit of a liberal construction. *Haines v. Kerner*, 404 U.S. 519, 520 (1972). A "liberal construction" means that if the essence of an allegation is discernible, the district court should construe the plaintiff's complaint in a way that permits his or her claim to be considered within the

proper legal framework. *Solomon v. Petray*, 795 F.3d 777, 787 (8th Cir. 2015). However, even pro se complaints are required to allege facts which, if true, state a claim for relief as a matter of law. *Martin v. Aubuchon*, 623 F.2d 1282, 1286 (8th Cir. 1980). *See also Stone v. Harry*, 364 F.3d 912, 914-15 (8th Cir. 2004) (stating that federal courts are not required to "assume facts that are not alleged, just because an additional factual allegation would have formed a stronger complaint"). In addition, affording a pro se complaint the benefit of a liberal construction does not mean that procedural rules in ordinary civil litigation must be interpreted so as to excuse mistakes by those who proceed without counsel. *See McNeil v. United States*, 508 U.S. 106, 113 (1993).

### The Complaint

Plaintiff is a self-represented litigant who is currently incarcerated at the Eastern Reception, Diagnostic and Correctional Center (ERDCC) in Bonne Terre, Missouri. He brings this civil action pursuant to 42 U.S.C. § 1983, naming the Farmington Community Supervision Center (FCSC) as the sole defendant.[1] (Docket No. 1). The substance of the complaint concerns plaintiff's allegations that he was wrongfully sent to the ERDCC from the FCSC for a parole violation.

In his "Statement of Claim," plaintiff begins by asserting that he was "incarcerated at" the FCSC on October 23, 2020. (Docket No. 1 at 4). He explains that the FCSC is part of the Missouri Department of Corrections under the Division of Probation and Parole. According to plaintiff, he was removed from the FCSC because a resident reported that plaintiff and another offender had sexually assaulted and sexually harassed him. Plaintiff states that he "was never found to have either sexually" assaulted or sexually harassed the alleged victim.

---

[1] The FCSC is a Missouri Department of Corrections Division of Probation and Parole facility for offenders under community supervision. It provides a structured residential program to assist and supervise offenders transitioning from prison to the community, or offenders who are at risk of revocation from community supervision. *See* http://doc.mo.gov/division/probation-parole (last visited December 7, 2021).

Plaintiff asserts that he was "removed by [his] parole officer for rules #8 and #9 of the Probation and Parole rule book." (Docket No. 1 at 5). He was then transported to the St. Francis Jail, noting that he "was never read [his] Miranda Rights." From there, plaintiff went to the ERDCC. He alleges that he "received no write up" and was not "given the chance to explain [himself]." Plaintiff further contends that he "was seen on video not doing nothing."[2]

As to the alleged victim, plaintiff asserts that the victim has "sent three residents back" to the Missouri Department of Corrections. In addition, the alleged victim "was given a [furlough] home for his safety," while plaintiff "was removed for no reason." (Docket No. 1 at 6).

Plaintiff denies any threats or sexual comments directed at the alleged victim. He also denies that he and the other offender did anything else to the alleged victim. Plaintiff closes his "Statement of Claim" by stating that there was never an "investigation done."

Based on his parole violation and return to the ERDCC, plaintiff states that he has suffered depression, mental anguish, and PTSD. (Docket No. 1 at 7). He seeks actual damages in the amount of $1,000 per day that he has spent in the ERDCC, and $500,000 in punitive damages. (Docket No. 1 at 8).

---

[2]In support of this proposition, plaintiff refers to a companion case, *Lacy v. Callahan, et al.*, No. 4:21-CV-45 RLW (E.D. Mo. Jan. 11, 2021). The case was brought by an inmate named Toby Lacy, with whom plaintiff was jointly accused of committing sexual assault and sexual harassment against another offender. Similar to plaintiff, Mr. Lacy contended that his parole was violated, and he was removed from the FCSC. As suggested by plaintiff, Mr. Lacy's complaint contains allegations and exhibits regarding the video footage of the alleged sexual assault and sexual harassment. Contrary to what plaintiff asserts in the instant case, however, the complaint in *Lacy* does *not* show Plaintiff "doing nothing." Rather, the video camera apparently recorded footage of plaintiff and Mr. Lacy entering the victim-offender's cell and moving around on the bottom bunk with him. Based on the positioning of the top bunk, it was unclear what was actually happening. *Lacy* was dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B) on May 10, 2021. The appeal of the *Lacy* dismissal was dismissed for failure to prosecute on September 1, 2021.

**Discussion**

Plaintiff is a self-represented litigant who brings this civil action pursuant to 42 U.S.C. § 1983, alleging that he was wrongfully removed from the FCSC after being accused of sexual assault and sexual harassment. Because plaintiff is proceeding in forma pauperis, the Court reviewed his case under 28 U.S.C. § 1915. Based on that review, and for the reasons discussed below, the Court must dismiss this action without prejudice.

**A.  The FCSC is Not a "Person" Under 42 U.S.C. § 1983**

The FCSC is the sole defendant named in plaintiff's 42 U.S.C. § 1983 case. "Section 1983 provides for an action against a 'person' for a violation, under color of law, of another's civil rights." *McLean v. Gordon*, 548 F.3d 613, 618 (8th Cir. 2008). *See also Deretich v. Office of Admin. Hearings*, 798 F.2d 1147, 1154 (8th Cir. 1986) (stating that "[§]1983 provides a cause of action against persons only"). However, "neither a State nor its officials acting in their official capacity are 'persons' under § 1983." *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989). *See also Calzone v. Hawley*, 866 F.3d 866, 872 (8th Cir. 2017) (explaining that a "State is not a person under § 1983"); and *Kruger v. Nebraska*, 820 F.3d 295, 301 (8th Cir. 2016) (explaining that "a state is not a person for purposes of a claim for money damages under § 1983").

The FCSC is part of the Missouri Department of Corrections. The claim against it is thus treated as a claim against the State of Missouri itself. As previously explained, a state is not a "person" for purposes of a 42 U.S.C. § 1983 claim for money damages. Because the state is not a "person," plaintiff is missing an essential element of a § 1983 action. Therefore, plaintiff's claim against the FCSC must be dismissed.

**B.  Plaintiff's Claim Against the FCSC is Barred by Sovereign Immunity**

Plaintiff's claim against the FCSC is also barred by sovereign immunity. "Sovereign immunity is the privilege of the sovereign not to be sued without its consent." *Va. Office for Prot.*

*& Advocacy v. Stewart*, 563 U.S. 247, 253 (2011). The Eleventh Amendment has been held to confer sovereign immunity on an un-consenting state from lawsuits brought in federal court by a state's own citizens or the citizens of another state. *Edelman v. Jordan*, 415 U.S. 651, 662-63 (1974). *See also Webb v. City of Maplewood*, 889 F.3d 483, 485 (8th Cir. 2018) ("The Eleventh Amendment protects States and their arms and instrumentalities from suit in federal court"); and *Egerdahl v. Hibbing Cmty. Coll.*, 72 F.3d 615, 618-19 (8th Cir. 1995) ("Generally, in the absence of consent a suit in which the State or one of its agencies or departments is named as the defendant is proscribed by the Eleventh Amendment"). The Eleventh Amendment bars suit against a state or its agencies for any kind of relief, not merely monetary damages. *Monroe v. Arkansas State Univ.*, 495 F.3d 591, 594 (8th Cir. 2007) (explaining that district court erred in allowing plaintiff to proceed against state university for injunctive relief, and remanding matter to district court for dismissal).

There are two "well-established exceptions" to the sovereign immunity provided by the Eleventh Amendment. *Barnes v. State of Missouri*, 960 F.2d 63, 64 (8th Cir. 1992). "The first exception to Eleventh Amendment immunity is where Congress has statutorily abrogated such immunity by clear and unmistakable language." *Id*. The second exception is when a state waives its immunity to suit in federal court. *Id*. at 65. A state will be found to have waived its immunity "only where stated by the most express language or by such overwhelming implications from the text as will leave no room for any other reasonable construction." *Welch v. Tex. Dep't of Highways & Pub. Transp.*, 483 U.S. 468, 473 (1987). Neither exception is applicable in this case.

First, the Supreme Court has determined that 42 U.S.C. § 1983 – under which this case arises – does not revoke a state's Eleventh Amendment immunity from suit in federal court. *See Will*, 491 U.S. at 66 ("We cannot conclude that § 1983 was intended to disregard the well-established immunity of a State from being sued without its consent"); and *Quern v. Jordan*, 440 U.S. 332, 341 (1979) ("[W]e simply are unwilling to believe … that Congress intended by the general language of

§ 1983 to override the traditional sovereign immunity of the States"). Second, the State of Missouri has not waived its immunity in this type of action. *See* RSMo § 537.600 (explaining that sovereign immunity is in effect, and providing exceptions).

In this case, as previously explained, the claim against the FCSC – which is part of the Missouri Department of Corrections – is treated as a claim against the state itself. Such a claim, for any type of relief, is barred by the Eleventh Amendment. Furthermore, no exceptions to sovereign immunity apply. Therefore, for this reason as well, plaintiff's claim against the FCSC must be dismissed.

### C. Failure to State a Claim

As discussed above, plaintiff has named the FCSC as the only defendant in this civil action. The claim against the FCSC must be dismissed because it is not a 42 U.S.C. § 1983 "person," and because the claim is barred by the Eleventh Amendment. Beyond the FCSC, plaintiff has not specifically identified anyone else as a defendant. The only other person mentioned in the complaint – aside from plaintiff's co-offender and the victim – is plaintiff's parole officer. Even presuming that plaintiff meant to name the parole officer as a defendant, he has failed to state a claim.

To begin, plaintiff has not indicated the capacity in which the parole officer is sued. Thus, the parole officer is assumed to be sued in an official capacity only. *See Baker v. Chisom*, 501 F.3d 920, 923 (8th Cir. 2007) (explaining that if a plaintiff's complaint is silent about the capacity in which the defendant is being sued, the complaint is interpreted as including only official capacity claims); and *Johnson v. Outboard Marine Corp.*, 172 F.3d 531, 535 (8th Cir. 1999) ("[I]n order to sue a public official in his or her individual capacity, a plaintiff must expressly and unambiguously state so in the pleadings, otherwise, it will be assumed that the defendant is sued only in his or her official capacity"). An official capacity claim against an individual is treated as being made against the governmental entity employing that person. *See White v. Jackson*, 865 F.3d 1064, 1075 (8th Cir.

7

2017) (stating that in an official capacity claim against an individual, the claim is actually "against the governmental entity itself").

In this case, an official capacity claim against the parole officer – a state employee – fails for two reasons. First, the State of Missouri is not a 42 U.S.C. § 1983 "person" for purposes of an official capacity claim against a state employee. *See Will*, 491 U.S. at 71 (explaining that "neither a State nor its officials acting in their official capacity are 'persons' under § 1983"). Second, an official capacity claim against a state employee for money damages is barred by the Eleventh Amendment. *See Andrus ex rel. Andrus v. Arkansas*, 197 F.3d 953, 955 (8th Cir. 1999) ("A claim for damages against a state employee in his official capacity is barred under the Eleventh Amendment").

Even if the Court were to ignore this presumption, plaintiff has not stated an individual capacity claim against the parole officer either. Individual liability in a 42 U.S.C. § 1983 case is personal. *Frederick v. Motsinger*, 873 F.3d 641, 646 (8th Cir. 2017). In other words, "[g]overnment officials are personally liable only for their own misconduct." *S.M. v. Krigbaum*, 808 F.3d 335, 340 (8th Cir. 2015). As such, § 1983 liability "requires a causal link to, and direct responsibility for, the deprivation of rights." *Mayorga v. Missouri*, 442 F.3d 1128, 1132 (8th Cir. 2006) (quoting *Madewell v. Roberts*, 909 F.2d 1203, 1208 (8th Cir. 1990)). *See also Kohl v. Casson*, 5 F.3d 1141, 1149 (8th Cir. 1993) (dismissing plaintiff's excessive bail claims because none of the defendants set plaintiff's bail, and therefore, "there can be no causal connection between any action on the part of the defendants and any alleged deprivation" of plaintiff's rights). To that end, a plaintiff must allege facts connecting the defendant to the challenged action. *See Bitzan v. Bartruff*, 916 F.3d 716, 717 (8th Cir. 2019).

The only allegation directed against the parole officer is that the officer "removed" plaintiff from the FCSC for violating "rules # 8 and #9 of the Probation and Parole rule book." There is nothing in this brief reference to indicate that the parole officer acted inappropriately. Certainly,

plaintiff has not demonstrated a connection between an action taken by the parole officer and the violation of one of his constitutional rights.

To the extent that plaintiff can be understood to allege that the parole officer – or any other state employee – violated a policy or procedure of the Missouri Department of Corrections or the Division of Probation and Parole, or Missouri law, such a claim would be subject to dismissal. It is well established that "there is no constitutional liberty interest in having state officers follow state law or prison officials follow prison regulations." *Phillips v. Norris*, 320 F.3d 844, 847 (8th Cir. 2003). *See also Jenner v. Nikolas*, 828 F.3d 713, 716-17 (8th Cir. 2016) (explaining that "[t]he existence of a state-mandated procedural requirement does not, in and of itself, create a constitutionally protected liberty interest"). Because plaintiff does not have a liberty interest in a state official following state law, regulations, or procedures, he has not demonstrated a constitutional violation, which is required for a 42 U.S.C. § 1983 claim.

For all these reasons, even if the Court looks beyond the FCSC, plaintiff has still failed to state a claim.

### D. Parole Violation Claim Subject to Dismissal Under *Heck v. Humphrey*

The Court also notes that to the extent plaintiff is alleging that his parole was improperly revoked, such a claim is subject to dismissal, as it would necessarily imply the invalidity of his revocation.

In *Heck v. Humphrey*, the Supreme Court faced the issue of whether a state prisoner could challenge the constitutionality of his criminal conviction in a suit for damages under 42 U.S.C. § 1983. *Heck v. Humphrey*, 512 U.S. 477, 478 (1994). The Court determined that the plaintiff's § 1983 action for damages was not cognizable. *Id*. at 483. In doing so, the Court noted that a § 1983 action was not the appropriate vehicle for challenging criminal judgments. *Id*. at 486.

> [I]n order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus…A claim for damages bearing that relationship to a conviction or sentence that has not been so invalidated is not cognizable under § 1983.

*Id*. at 487-88. Thus, when a state prisoner seeks damages pursuant to § 1983, the district court has to consider whether a judgment for the plaintiff would "necessarily imply the invalidity of his conviction or sentence." *Id*. at 488. If it would, the district court must dismiss the complaint unless the plaintiff can show that the conviction or sentence has already been invalidated. *Id*. See also *Edwards v. Balisok*, 520 U.S. 641, 648 (1997) (concluding that state prisoner's "claim for declaratory relief and money damages based on allegations of deceit and bias on the part of the decisionmaker that necessarily imply the invalidity of the punishment imposed, is not cognizable under § 1983"); and *Sheldon v. Hundley*, 83 F.3d 231, 233 (8th Cir. 1996) (discussing application of *Heck* rule in § 1983 cases).

The rule in *Heck* has been applied to plaintiffs using 42 U.S.C. § 1983 to attack the revocation of their parole. *See, e.g., Newmy v. Johnson*, 758 F.3d 1008, 1011-12 (8th Cir. 2014) (stating that district court properly dismissed plaintiff's complaint because judgment for plaintiff would necessarily imply the invalidity of the parole revocation); and *Flying Horse v. Hansen*, 691 Fed. Appx. 299, 300 (8th Cir. 2017) (*Heck* bar applied to plaintiff's claim for damages after revocation of parole, because "a judgment in his favor would render the parole revocation invalid"). In *Newmy*, the Eighth Circuit recognized that the *Heck* favorable termination rule "could preclude a damages remedy for an inmate who is detained for only a short time with limited access to legal

10

resources, but that is a consequence of the principle barring collateral attacks that was applied in *Heck*." *Newmy*, 758 F.3d at 1012.

In the instant case, plaintiff appears to be alleging that his parole was revoked and that he was returned to the ERDCC for an extended period of incarceration. However, plaintiff has not demonstrated that his parole revocation has been rendered invalid. Consequently, any claim he asserts in his 42 U.S.C. § 1983 action regarding the revocation of his parole is barred by *Heck*.

### E. Motion to Appoint Counsel

Plaintiff has filed a motion to appoint counsel. (Docket No. 3). The motion will be denied as moot as this action is being dismissed without prejudice. *See* 28 U.S.C. § 1915(e)(2)(B).

### F. Motion Requesting Inmate Account Statement and Motion for Extension of Time to Provide Inmate Account Statement

Plaintiff submitted two letters to the Court that have been construed as motions. The first requests help in obtaining his inmate account statement, and the second seeks an extension of time in which to provide his inmate account statement. (Docket No. 4; Docket No. 5). Before the Court ruled on these motions, plaintiff filed a certified inmate account statement, thereby complying with 28 U.S.C. § 1915(a)(2). As such, these two motions will be denied as moot.

Accordingly,

**IT IS HEREBY ORDERED** that plaintiff's motion for leave to proceed in forma pauperis (Docket No. 2) is **GRANTED**.

**IT IS FURTHER ORDERED** that plaintiff must pay an initial partial filing fee of $2.05 within twenty-one (21) days of the date of this order. Plaintiff is instructed to make his remittance payable to "Clerk, United States District Court," and to include upon it: (1) his name; (2) his prison registration number; (3) the case number; and (4) the statement that the remittance is for an original proceeding.

**IT IS FURTHER ORDERED** that plaintiff's motion for appointment of counsel (Docket No. 3) is **DENIED as moot**.

**IT IS FURTHER ORDERED** that plaintiff's motions requesting his inmate account statement (Docket No. 4) and for an extension of time to file his inmate account statement (Docket No. 5) are **DENIED as moot**.

**IT IS FURTHER ORDERED** that this action is **DISMISSED** without prejudice. *See* 28 U.S.C. § 1915(e)(2)(B). A separate order of dismissal will be entered herewith.

**IT IS FURTHER ORDERED** that an appeal from this dismissal would not be taken in good faith.

Dated this 8th day of December, 2021.

*Ronnie L. White*
**RONNIE L. WHITE**
**UNITED STATES DISTRICT JUDGE**